## Appeal of MRS. ANNE B. RICHARDSON.     Docket No. 427.

Under Section 214(a)(6) of the Revenue Act of 1921 a deductible loss caused by storms must be of such a character that it can be definitely ascertained and measured in terms of money values.

The evidence presented in this appeal held insufficient to support a deduction from gross income growing out of damage to a natural woodland caused by an ice storm.

Submitted January 24, 1925; decided February 10, 1925.

*Philip S. Parker, Esq.*, for the taxpayer.

*Willis D. Nance, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before STERNHAGEN, TRAMMELL, and TRUSSELL.

At the hearing of this appeal there were placed in evidence depositions of Anne B. Richardson, the taxpayer, and Walter Channing, residing at Dover, Mass., and engaged in the real estate business; a revenue agent's report dated April 30, 1924, and the Commissioner's deficiency letter dated August 23, 1924, from which the Board makes the following

### FINDINGS OF FACT.

The taxpayer is the owner of a residential farm in that part of Needham, Mass., called Charles River Village, of 120 acres, 60 of which is woodland consisting mostly of deciduous trees, chiefly oak, and 60 acres of farming and grazing land, all bordering on the Charles River. She acquired this residential farm by purchase in 1907 at a cost of $47,000. About 1912 a stone residence and stone garage were erected; old buildings remodeled and a brick dairy built. The cost of these buildings amounted to $142,000. On March 1, 1913, their value was that amount, which, with the value of the land, gave the whole estate a value of $189,000. In 1915 a wooden farmhouse was moved onto the estate and remodeled at a cost of $8,000. The areas of woodland, 10 acres of which were in the immediate vicinity of the house, forming shade trees, and the balance being wilder growth, some visible from the house, added much to the beauty, attractiveness, and value of the estate for residential purposes.

In November, 1921, there occurred an "ice storm." The moisture clung to the trees and their branches and by a slow freezing process covered them with a coating of ice, in some places nearly an inch thick. A high wind followed and during the night practically all of the trees were mutilated and a number destroyed. In the morning the whole woodland area presented a mutilated and desolate appearance.

In making her income tax return for the year 1921 the taxpayer claimed a deduction from gross income in the amount of $3,000 as damages caused by the so-called ice storm. This deduction the Commissioner disallowed and determined a deficiency in tax in the sum of $510.34, from which the taxpayer brings this appeal.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

TRUSSELL: This appeal is based on a disallowance by the Commissioner of an alleged loss caused by storm which had been claimed

under section 214 (a) (6) of the Revenue Act of 1921, the relevant portion of which reads as follows:

Losses sustained during the taxable year of property not connected with the trade or business * * * if arising from fires, storms, shipwreck, or other casualty, or from theft, and if not compensated for by insurance or otherwise.

In support of her claim the taxpayer testified:

The existence of large shade trees makes the residential property much more desirable and does not necessitate the planting of evergreens and deciduous trees. It also acts as a protection from passers-by on the roads, and without them a country place for residential purposes would be much less attractive. The existence of shade trees greatly enhances the value of the residence.

During two continuous days of freezing, with a damp drizzle, all trees, shrubs, and even grasses, were covered with a thick coating of ice, in some cases nearly three-quarters of an inch thick, so heavily weighing the trees that practically not one shrub or tree on my property was left without mutilation. As a result of a high wind one-third of the trees in all the 60 acres of woodland was broken off, and in many cases the whole tree was felled to the ground.

She also testified that the value of her estate prior to the storm was $197,000 and after the storm $194,000.

The witness, Walter Channing, in his deposition qualified as an experienced dealer in real estate and as an appraiser of property values in the vicinity of the taxpayer's property, and supported the views of the taxpayer with reference to the values of her property both before and after the storm.

It does not appear, however, that any effort was made by the taxpayer to make any detailed account or estimate of the damage alleged to have been caused by the storm. The taxpayer owned an estate upon which there was a natural woodland of approximately 60 acres which added much to the beauty of the place, making it more desirable as a country residence, and after the storm many of the trees of natural growth were mutilated and some of them entirely destroyed. But there is no proof as to the quantity of the mutilation and no proof of the number of trees which existed before the storm and the number existing after the storm.

We may well agree with the taxpayer that immediately following the storm and for some time thereafter the natural beauty of her country residence had been marred, but the amount of the damage done, as shown in the record, is too uncertain and indefinite to form a basis for a deduction from gross income. The expense of cleaning up and removing the débris caused by the storm has been allowed and for the time being that is the only definitely known measure of damages. If the taxpayer retains the ownership of her property until nature shall have had the opportunity to repair the woodland, she will probably suffer no other money damages. We are, therefore, of the opinion that the action of the Commissioner in disallowing the deduction must be sustained.