956

**BARRET et al. v. UNITED STATES.**

Civ. A. No. 3269.

United States District Court
W. D. Louisiana, Shreveport Division.

Feb. 20, 1952.

Rehearing Denied April 8, 1952.

See 103 F.Supp. 730.

Cook, Clark & Egan, C. D. Egan, Shreveport, La., for plaintiffs.

William J. Fleniken, Acting U. S. Atty., Shreveport, La., Richard M. Roberts, Sp. Asst. to the Atty. Gen., for defendant.

DAWKINS, Chief Judge.

Plaintiff claims a refund of income taxes based upon the disallowance of a credit in 1946 for loss and damage to valuable trees and the residential premises upon which they were growing, caused by storm and freeze in the winter of 1943–1944.

It is alleged that the damages claimed and disallowed were $17,207.75, and that the claimant was compelled to pay a deficiency with interest, amounting to $10,365.-96, for which amount the refund is claimed.

Defendant admitted all allegations of the complaint with respect to the deduction claimed in the tax return, its disallowance, and the amount required to be paid, but averred this was done on September 19, 1950, instead of May 15 of that year, as alleged. It denied all allegations as to the value of the trees, damage to the property, expenses, etc., as well as other allegations in support thereof.

The suit was filed on April 13, 1951, to recover the deficiency paid on behalf of both plaintiff and his wife; but upon discovering the property involved belonged wholly to the husband by inheritance from his parents, counsel filed an amended prayer to claim the whole for his account alone.

Defendant has objected to this amendment, but no sufficient reason is shown for its denial, and it will be allowed.

The first issue raised by the defendant is that the damage, if any, occurred immediately following the storm and freeze and could be claimed only in the return for the year 1944. On the other hand, plaintiff contends that, as a matter of fact, the extent of the damage was not ascertainable until a reasonable time had been allowed for nature to repair it in whole or in part, and that this condition did not reasonably develop until 1946.

There is little dispute that prior to the storm and freeze, the property consisted of a large, colonial type residence, situated upon a plot of ground in size more than the area of an ordinary city block of 300′ x 300′. The home, inherited as stated from plaintiff's parents, had been built among, and there had also been planted on the lot, numerous trees of various kinds pursuant to an artistic and symmetrical scheme, which added greatly to its beauty and value, and was on one of the principal residential streets among the wealthier class

of the City of Shreveport. Experts in landscaping and real estate values estimated that before the freeze the property as a whole was worth, and had a market value to anyone of the means to own it, of $75,000; of this amount, $25,000 was fixed as the value of the trees.

It was clearly proven that in the period, December through January, 1943-1944, a very severe freeze occurred over a wide area of North Louisiana and Mississippi, which caused great damage to trees and shrubbery. Its extent and effects upon the property of claimant involved here, it is believed, have been amply proven. The more exact question is whether, in determining the extent of the damage, it should be approached by treating the property as a residence or home and the depreciation for that purpose; or for its availability for commercial use, and if the value for that purpose would offset the loss to the owner as a residence. At least, it seems clear that the determining factor is the loss in dollars and cents to the claimant which was caused by the freeze. It is not a case in which sentiment or aesthetic considerations which do not add to or detract from the market value of the property, can have any effect. The allowable deduction, if any, is, in its nature, a capital loss.

The burden, of course, was upon plaintiff to prove that loss by a fair preponderance of the evidence, and the question of when conditions occurred which made it possible to ascertain its extent depends upon whether the property must be treated as residential or commercial. If it did have a substantial loss in market value for residential purposes, then to what extent, if at all, was this compensated for by its availability for commercial use? It would seem to go without saying that if it had a value of $75,000 before the freeze for the former, and afterwards it would have brought on the market for the latter an equal amount, without regard to the presence or absence of the trees, then the complainant would have suffered no actual loss.

It was shown that a substantial portion of the lot or land on the rear had been sold for purposes other than residential, between the time of the freeze and the date of the trial. Yet, it was also proven that a residence costing $100,000 or more had "in the meantime" been erected on the opposite side of Fairfield Avenue, on which the property here involved faces. Also, that there were large and expensive homes on either side of this Avenue belonging to men of wealth, the use of which had not been seriously affected by the approach of commercial construction. It is well known that there are many instances in cities where some of the most valuable and expensive residences face on one street, and on the rear of the same square, facing the other way, tenements or business properties exist.

The only witness called on behalf of the Government, as to the extent of the damage, fixed it at the sum of $25,000, which of course is in excess of the amount claimed in the return.

Defendant stresses a statement by complainant, when called for further examination after having previously testified as a witness, to the effect that he had been approached on one or more occasions with proposals to buy this property since the freeze, in which he was asked to name his own price, as showing there was no actual loss. However, on analysis, this has the appearance more of "puffing" than to establish any concrete or exact value of the property.

A full consideration of all evidence in the case, the Court is convinced, fairly establishes the damage to the extent claimed, and the remaining question is as to when it occurred.

When one, who is not himself an expert in such matters, is concerned with a condition such as was caused by the freeze and destruction in this case, what is he to do in determining its extent and ultimate effects, for the purpose of claiming the loss in his income tax return, as he is permitted to do by the law? Should he immediately claim the loss as it appears while the debris is yet on his property, or is it his duty, as in all cases, to minimize the damage through efforts to rectify the situation and to restore the condition so far as it is possible before claiming the damage?

The damage in this instance occurred in the latter part of December, 1943, and the

958

freeze continued well into the month of January, 1944, during which it was not possible even to remove the broken limbs, etc.; and the income tax return for the year 1944 had to be filed not later than March 15 thereof.

█ It would seem that plaintiff did the only reasonable thing that he could have done by employing experts in landscaping, etc., of some thirty years experience, both to remove, clean up and care for the trees after the freeze, and to advise him as to the course to be pursued in an effort to minimize the damage. Had the claim been made promptly after the freeze, it might well have been contended by the Government that the extent of the damage was not reasonably ascertainable until it could be seen how much recovery of the former condition there might be. It must be assumed, it is thought, since there is nothing to the contrary, that the experts and the plaintiff acted in good faith. They say that it was not until April, 1946, that anyone could tell with any degree of conclusiveness whether there would be a substantial recovery from the damage or not. When this point had been reached, plaintiff was so advised, and he made his claim for the deduction of the loss in the income tax return for that year.

Plaintiff is entitled to a refund on the basis of the damage thus claimed and proven.