Ralph Walton and Bonnie Jo Walton v. Commissioner.
Walton v. Commissioner
Docket No. 80362.
United States Tax Court
T.C. Memo 1961-130; 1961 Tax Ct. Memo LEXIS 218; 20 T.C.M. (CCH) 653; T.C.M. (RIA) 61130; May 12, 1961
*218 A storm destroyed trees on petitioners' residential property. Held, under the facts of this case the deductible loss is measured by the permanent decrement in value of the property, plus the expense of cleaning up the storm damage. F. Wilson Chockley, Jr., Esq., for the petitioners. J. P. Graham, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined a deficiency of $240.74 in petitioners' income tax for the taxable year 1956. In that year petitioners sustained a casualty loss occasioned by the destruction of five trees on their residential property. The sole question before us is the amount of the loss. Findings *219 of Fact Some of the facts have been stipulated. They are found accordingly. Petitioners are husband and wife and reside in Lakewood, Ohio. They filed their joint Federal income tax return for the taxable year 1956 with the district director of internal revenue at Cleveland, Ohio. Petitioners own and live in a large three-story house located in a suburban community just outside Cleveland. The house is situated on a lot approximately 100 by 240 feet. The north side of the property is a bluff overlooking Lake Erie. It contains about 30 mature trees in scattered positions about the lot. Most of them are Oaks, 50 to 75 feet tall. The neighborhood is one of substantial homes and is considered a "prestige location." Petitioners purchased this property in 1947 for $28,000. On May 12, 1956, a severe squall from off Lake Erie struck in the neighborhood and destroyed five of petitioners' trees. [1] Of the five, one had shaded the master bedroom and another shaded the back porch. A third screened the bedroom and bathroom windows and the garage from the street. The number, size and location of the trees on petitioners' *220 property before the storm contributed to its value and the destruction of some of them reduced said value. On their 1956 income tax return petitioners deducted $2,000 as a loss resulting from the destruction of the trees. In January 1958 they filed an amended 1956 return in which they increased the claimed loss to $3,000. This increase was based on a letter dated June 17, 1957 written by a local realtor in which he estimated the fair market value of the petitioners' property prior to the storm as $36,000 and its fair market value after the storm as $33,000. The realtor had made these estimates at petitioners' request for purposes of substantiating the loss claimed by them. The letter was attached to petitioners' amended return. A valuation engineer for the Internal Revenue Service examined petitioners' property in the summer of 1958 and estimated that petitioners' loss was $1,460. In the deficiency notice respondent disallowed $540 of the $2,000 deduction claimed in petitioners' original return and determined the deficiency on the basis of the amount disallowed. Opinion The only question for decision in this case is the amount of petitioners' loss under section 165(c)(3), Internal Revenue Code *221 of 1954. Both parties agree that the fair market value of the property before the loss was $36,000. Petitioners argue that its fair market value after the loss was $33,000 and the respondent contends it was $34,540. It is petitioners' burden to prove the amount of their loss. At trial petitioner Ralph Walton testified that he had been told to find a man qualified by experience in the community to estimate the value of his property before and after the loss and that after inquiring of three or four people, he called T. D. Auble, a Lakewood realtor. Walton further testified, without objection by respondent, that in the telephone conversation Auble stated that he was familiar with petitioners' property and had been for many years. Auble agreed to make the estimate and on June 17, 1957, sent Walton a letter in which he stated that he had inspected the property and that in his opinion before the damage in question it had a fair market value of $36,000 and after the damage a fair market value of $33,000. This letter bore the following letterhead: T. D. AUBLE, M.A.I., Realtor - Appraiser, 15509 Madison Avenue, Lakewood 7, Ohio
Member American Institute of Real Estate Appraisers *222 National Association of Real Estate Boards
Ohio Association of Real Estate Boards Cleveland Real Estate Board At trial petitioners' counsel told the Court that petitioners' expert witness, Auble, was suffering from a serious illness and was unable to testify. Respondent agreed that if called to testify, Auble would have testified as to the values stated in his letter of June 1957. (On brief, counsel for petitioner states that Auble has since died.) Petitioners raise some question as to the manner in which respondent arrived at the amount he allowed as petitioners' loss. Respondent's witness testified that he agreed with Auble's estimate of the fair market value of the property before the storm and that he had arrived at the amount of the loss by estimating "what the fair market value of the property would be after the storm before cleaning up." His estimate was that the loss was $1,460. He testified that this amount was arrived at by allowing $800 for expenses of cleaning up the property and that the remainder was for the permanent loss to the property from the destruction of the trees. In addition to the testimony of the witnesses, evidence in this case included photographs *223 and a diagram of the property. Section 165 of the Internal Revenue Code of 1954 provides a deduction for a casualty loss arising from a storm. Section 1.165-7(a)(2), Income Tax Regs., provides the loss shall be valued by subtracting the fair market value immediately after the casualty from the fair market value immediately before the casualty. This method of valuation has been prescribed by the Internal Revenue Service since at least 1939 (GCM 21013, 1939-1 C.B. 101) and perhaps since 1936 (G.C.M. 16255, XV-1 C.B. 115 (1936)) and has been sanctioned by the Supreme Court in Helvering v. Owens, 305 U.S. 468. In cases of this sort the words of the regulation "immediately after the casualty" mean what they say. That is, the amount of diminution in fair market value is to be measured just after the loss has taken place and before cleanup has begun. Thus, the amount of loss suffered is composed of an amount which represents the permanent decrement in value of the property plus the amount to be spent for cleaning *224 up the storm damage. This is so because the price the property owner could receive for the property immediately after the casualty would be its bargained-for value less the cost of cleaning up the storm damage. This rule has been adopted by this Court in two recent storm damage cases: In Katharine B. Bliss, 27 T.C. 770, reversed on another ground, Bliss v. Commissioner, 256 F. 2d 533, and in Lena L. Steinert, 33 T.C. 447. [2] In both these cases, and indeed in the case before us, respondent has allowed the cleanup expenses as a part of the casualty. [3] Petitioners have produced no evidence that the amount of these expenses exceeded the $800 allowed by respondent, so we adopt respondent's figure. Thus the only difference of opinion here is in the amount to be allowed for the permanent loss in value to the property.
*225 The inability of petitioners' expert witness to testify [4] leaves the record without an explanation as to how he arrived at the amount of the loss set forth in his letter to petitioners. However, we feel his letter is entitled to some weight and our examination of the entire record in this case convinces us that respondent's figure of $660 for the permanent loss in value to the property resulting from the destruction of the trees is too low. We believe that $1,200 would more adequately represent such loss. This, combined with the cleanup expense of $800, results in a casualty loss for petitioner of $2,000 in 1955. We so hold. Decision will be entered under Rule 50. Footnotes
1. One of the five, however, was described as a "double tree."↩
2. See also Western Products Co., 28 T.C. 1196; Leet v. Commissioner, 230 F. 2d 845, affirming a Memorandum Opinion of this Court; Barret v. United States, 102 F. Supp. 956, affd. United States v. Barret, 202 F. 2d 804; Mary Cheney Davis, 16 B.T.A. 65; Ann B. Richardson, 1 B.T.A. 576↩. 3. See IR Circular No. 55-11, 2-3-55, (reissued in 1959 in IR Publication No. 155, which reviews the income tax treatment by the Internal Revenue Service of casualty losses from hurricanes. This circular states, in part: A deduction is allowed only for losses to property owned by the taxpayer. He cannot deduct, for example, expenses for personal injuries, temporary lights, fuel, moving, or rentals for temporary quarters. The amount of the loss is the excess of the value of the property immediately before the casualty over its value immediately after the casualty, but may not exceed the cost or other adjusted basis of the property. * * * While costs of repairs, restoration, or cleaning up or removing debris cannot be used as a measure of the loss, the "value immediately after the casualty" means the value before the property is repaired, restored, or cleaned up. Sentimental values are not considered. * * *↩
4. We recognize petitioners' dilemma. The testimony of another expert whose appraisal would have been made some five years after the casualty would have been worth little.↩