THE CHESAPEAKE CORPORATION OF VIRGINIA, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25004. Promulgated October 10, 1951.

*William T. Hodge, Esq.,* for the petitioner.
*E. M. Woolf, Esq.,* for the respondent.

**OPINION.**

ARUNDELL, *Judge:* There is no disagreement between the parties as to the deductibility, in some year, of the $100,000 paid by the pe-

titioner in February 1945 to the Life Insurance Company of Virginia as the first premium under the group annuity policy issued on February 27, 1945. The pension plan in connection with which the policy was issued has been ruled by the respondent to be a qualified plan, and the respondent does not contend that the cost exceeds the amount that is deductible under Internal Revenue Code section 23 (p) (1) (B) as representing "contributions paid by an employer * * * toward the purchase of retirement annuities * * *." The difference between the parties is entirely as to whether the premium payment is a proper deduction for the year 1944 for which it was claimed by the petitioner. This difference arises out of the parties' application to the facts of this case of the provisions of section 23 (p) (1) (E).

There are several subparagraphs of paragraph (1) of section 23 (p), three of which should be noticed before considering subparagraph (E). They are subparagraphs (A), (B), and (C). Each provides for a deduction "In the taxable year when paid" for employers' contributions, respectively, into a pension trust (subparagraph (A)), toward the purchase of retirement annuities (subparagraph (B)), and into a stock bonus or profit-sharing trust (subparagraph (C)). Subparagraph (E) provides as follows:

(E) For the purposes of subparagraphs (A), (B), and (C), a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made within sixty days after the close of the taxable year of accrual.

Counsel for the petitioner concedes that section 23 (p) (1) (B) states generally that payments made towards the purchase of retirement annuities can be deducted only in the year they are paid. He contends, however, that subparagraph (E) provides in effect a 60-day grace period for payment by taxpayers on the accrual basis. On this premise the argument runs that this petitioner being on the accrual basis, having made payment within 60 days after the end of 1944, and such payment having been made on account of the year 1944, all the requirements of subparagraph (E) have been satisfied. Counsel for the respondent takes the position that since no annuity plan was in effect at the close of the year 1944, there was no contribution or premium that rightfully could have been accrued for that year.

We are of the opinion that the respondent correctly disallowed the deduction for the year 1944 of the $100,000 premium that was paid in February 1945. Subparagraph (E) of section 23 (p) (1) allows a deduction for a payment made within 60 days after the close of "the taxable year of accrual." This seems to us to mean that in order to support a deduction there must have been an accrual in the taxable year—in this case 1944—in the sense that "accrual" is understood for

tax accounting purposes. That is, all events must have occurred which fixed the amount of the premium and the petitioner's liability to pay it. *United States* v. *Anderson*, 269 U. S. 422. "It is settled by many decisions that a taxpayer may not accrue an expense the amount of which is unsettled or the liability for which is contingent * * *." *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281. In order for a deduction to be allowable to an accrual basis taxpayer, "the existence of an absolute liability is necessary; absolute certainty that it will be discharged is not." *Helvering* v. *Russian Finance & Construction Corp.*, 77 F. 2d 324. Under the principle of the cited cases, we are unable to see how the year 1944 can be said to be the "year of accrual." In that year nothing had been done to fix any liability on the petitioner for a premium payment or contribution toward the purchase of retirement annuities. No retirement plan had been adopted. A proposed plan had been submitted in that year by an insurance company to the president and a director of the company, and the president approved, in general, the provisions of the proposal. But there is no evidence that the president had been authorized by either the directors or stockholders to commit the petitioner to a retirement plan. Evidently he had not been so authorized, as the proposed plan was submitted to the directors and stockholders in March 1945. It might well have occurred that the directors and stockholders would have repudiated the proposed plan. The application for the underwriting group annuity policy was not filed within the year 1944, nor was such an application authorized within the year. No annuity policy was issued within that year, and the petitioner did not incur any liability for any premium payment. In short, no steps were taken, or acts performed within the year 1944 which would support an accrual within that year.

The parties have stipulated that "as of December 31, 1944" the petitioner entered on its books the estimated amount of the first premium under the annuity contract. An entry on the books without liability therefor does not give rise to an allowable deduction. The entry may perhaps have been regarded by the petitioner's officers as a reserve for a contingent liability. Such reserves do not warrant a deduction for tax purposes. *Lucas* v. *American Code Co.*, 280 U. S. 445.

One of the petitioner's arguments is that the application of subparagraph (E) is not conditioned upon the existence of an executed annuity contract because enforceable liability under such a contract depends upon the payment of the premium—not upon the execution of the contract. Further, it is stated that there is never any obligation on the part of the insured to pay a premium. From this it is reasoned that, if the respondent is correct in requiring that there be an enforceable contract in effect at the close of the taxable year, such enforce-

ability can result only from the payment of the premium within that year, and that such interpretation renders meaningless the 60-day grace period. We do not find it necessary to analyze the petitioner's statements of the law defining the rights and obligations of insurer and insured. Our conclusion rests upon the term "taxable year of accrual" in subparagraph (E) of Internal Revenue Code section 23 (p) (1). Upon examination of all of the petitioner's acts in the year 1944 with respect to a proposed retirement plan, we do not find therein support for an accrual in that year.

The cases of *555, Inc.*, 15 T. C. 671, and *Crow-Burlingame Co.*, 15 T. C. 738, involved the application of section 23 (p) (1) (E) to trusts created for the benefit of employees. In both cases deductions were allowed for payments made within 60 days after the close of the taxable year. It was shown in both of those cases that within the taxable year the directors of the taxpayer corporations had authorized the establishment of the trusts, had approved tentative trust agreements, and had appropriated funds as trust corpus. Those cases are thus distinguishable on their facts from the present proceeding.

For the year 1945 the petitioner claimed a deduction in the amount of $375 which represents the amounts that it paid in that year to the New York Stock Exchange to maintain the listing of its stock. The respondent disallowed the deduction with the explanation that it was a "Fee for listing on N. Y. Stock Exchange."

It appears that the listing of the petitioner's stock on the Exchange took place prior to the taxable year. In each year thereafter, including the year 1945, the petitioner paid to the Exchange an amount to cover what the Exchange designates as a "Continuing Annual Fee for Stock." The amount of such fee is payable annually for 15 years and is calculated on the number of shares outstanding and listed on the anniversary date of the admission of the stock issue to deal on the Exchange.

In support of his disallowance of the Stock Exchange fee, counsel for the respondent cites cases which he contends have held that the cost of listing a stock issue is not a deductible expense. *Dome Mines, Ltd.*, 20 B. T. A. 377; *Baltimore & Ohio Railroad Co.*, 29 B. T. A. 368. We are not here concerned with a listing fee, which is an item that is paid but once, and any benefits flowing therefrom presumably last over a period of years. Such a payment has been ruled to be a capital expenditure. I. T. 1836, II–2 C. B. 158. The item here in dispute is an annually recurring cost for the annual maintenance of the listing. Therefore, even on the assumption that it is a capital expenditure, it is one made for a capital item which is exhausted within one year and, consequently, an amount equivalent to the amount of the expenditure is deductible in the year in which it is made. We hold that the re-

spondent erred in disallowing the fee paid to the New York Stock Exchange.

In the year 1945 the petitioner expended $1,229.68 for wear plates for one of its conveyors. Such plates did not change the capacity or use of the conveyor or prolong its useful life. At that time such plates needed replacement every eight to ten months. The plates did "not add to the value of the property nor  *  *  *  appreciably prolong its life  *  *  *" but merely kept "the property in an operating condition over its probable useful life for the uses for which it was acquired." *Illinois Merchants Trust Co., Executor*, 4 B. T. A. 103. We hold that the respondent erred in not allowing the cost of the wear plates as an ordinary and necessary business expense.

The remaining item in issue is the cost in the amount of $2,879.02 of repairs to a house owned by the petitioner and rented to one of its officers. The evidence establishes that these repairs are such as are customarily made to keep rental property in a tenantable condition. No structural changes and no additions were made. The repairs fall in the same category as those under the last previously discussed issue, and it is held that the respondent erred in disallowing the claimed deduction.

Reviewed by the Court.

*Decision will be entered under Rule 50.*