SUBSCRIPTION TELEVISION, INC., SUCCESSOR BY MERGER TO JOHN BLUE COMPANY, INC., ET AL., [1] Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent Subscription Television, Inc. v. Commissioner
Docket Nos. 258-72, 259-72, 260-72, 261-72.
United States Tax Court
T.C. Memo 1974-107; 1974 Tax Ct. Memo LEXIS 212; 33 T.C.M. (CCH) 538; T.C.M. (RIA) 74107; April 30, 1974, Filed. Donald W. McCoy for the petitioner. Roy S. Fischbeck, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: In these consolidated cases, the Commissioner determined deficiencies in petitioner's income taxes as follows: Petitioner
Taxable Year Ended
Deficiency Subscription Television, Inc., Successor by Merger to John Blue Company, Inc.
May 31, 1967
$89,891.41
Subscription Television, Inc., Successor by Merger to Blue Equipment Company, Inc.
May 31, 1967
16,146.16
Subscription Television, Inc. Successor by Merger to Rex, Inc.
July 10, 1967
27,232.89
Subscription Television, Inc. Successor by Merger to Blue Company
July 10, 1967
963.31
*214 Because concessions have been made, the sole question remaining for decision is whether certain contributions made to a profit sharing trust within the grace period of section 404(a) (6) [2] qualify under that section for deduction in the fiscal year prior to payment. This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The facts which we deem necessary for decision will be referred to below. Subscription Television, Inc. (hereafter petitioner) is successor by merger to John Blue Company, Inc. (hereafter John Blue), Blue Equipment Company, Inc. (hereafter Equipment), Rex, Inc. (hereafter Rex), and Blue Company (hereafter Blue). At all times material to these proceedings, including the time it filed petitions in these cases, petitioner was a Delaware corporation with its principal place of business in New York, New York. John Blue was organized and incorporated as an Alabama corporation on January 7, 1945. At all times material to these proceedings its principal place of business was in Huntsville, Alabama, and its principal business *215 activity was manufacturing farm machinery and equipment. It kept its books and filed its returns on an accrual basis of accounting. Its corporate income tax returns for fiscal year ended May 31, 1967, was filed with the district director of internal revenue, Birmingham, Alabama. Equipment was organized and incorporated as an Alabama corporation on April 25, 1955. At all times material to these proceedings its principal place of business was in Huntsville, Alabama, and its principal business activity was selling farm equipment. It kept its books and filed its returns on the accrual basis of accounting. Its corporate income tax return for fiscal year ended May 31, 1967, was filed with the district director of internal revenue, Birmingham, Alabama. Rex was organized and incorporated as an Alabama corporation on November 1, 1961. At all times material to these proceedings its principal place of business was in Huntsville, Alabama, and its principal business activity was manufacturing fabricated metal products including aluminum and steel tanks. It kept its books and filed its returns on an accrual basis of accounting. Its corporate income tax raturn for the taxable period ended *216 July 10, 1967, was filed with the district director of internal revenue, Birmingham, Alabama. Blue was organized and incorporated as an Illinois corporation on December 8, 1962. At all times material to these proceedings its principal place of business was in Clinton, Illinois, and its principal business activity was wholesaling farm equipment. It kept its books and filed its returns on an accrual basis of accounting. Its corporate income tax return for the taxable period ended July 10, 1967, was filed with the district director of internal revenue, Chicago, Illinois. At all times material to these proceedings John Blue, Equipment, Rex, and Blue, along with John Blue Company of North Carolina, Blue Equipment Company of Georgia, Blue Equipment Company, Inc. of Maryland, Blue Equipment Company, Inc. of Tennessee, and Blue Equipment, Inc. of Ohio had substantially common ownership and were closely affiliated in manufacturing and selling farm machinery and equipment. (These nine affiliated corporations are hereinafter referred to collectively as the John Blue Group.) Prior to May 30, 1951, the board of directors of John Blue authorized the creation of a profit sharing plan and *217 trust for employees. Pursuant thereto, on May 30, 1951, John Blue and Birmingham Trust National Bank (hereafter Birmingham) executed a trust agreement entitled "The John Blue Company, Incorporated, Employees Profit Sharing Trust" (hereafter John Blue Trust). In a letter to John Blue dated June 18, 1951, the Commissioner opined that the John Blue Trust was entitled to exemption under the provisions of section 165(a) of the Internal Revenue Code of 1939. Article I, section 2 of the John Blue Trust agreement pertains to "Definitions" and provides in part: The term "Company" shall mean the party of the first part hereto, John Blue Company, Incorporated, and shall also include its successors and assigns. Article I, section 3 of the John Blue Trust agreement provides in part: The terms "Resolution" and "Certified Resolution" shall mean a resolution or a copy thereof certified by the Secretary or an Assistant Secretary of the Company to have been duly adopted by the Board of Directors of the Company and to be in full force and effect. Article II, section 1 of the John Blue Trust agreement pertains to "The Trust Fund" and provides in part: Subject to *218 such amendments as may be made hereto as permitted by Section 3 of Article IX of this Agreement the Company agrees to deposit with the Trustee on or before the expiration of sixty (60) days after May 31, 1951 in each year beginning May 31, 1951, an amount equal to fifteen percent (15%) of so much of the net earnings of the Company during the fiscal year ended such May 31, before deduction of Federal and State income and profits taxes, as exceeds twenty percent (20%) of the net worth of the Company, * * * at the close of the immediately preceding fiscal year ended May 31 of each year but not exceeding on account of any such fiscal year an amount equal to fifteen percent (15%) of the total compensation paid or accrued by the Company in each period June 1 to May 31, inclusive, to all persons who are Members on May 31 ending such fiscal year, to be reduced by the amount of all reversions to the Trust Fund during each such fiscal year under the provisions of this Agreement. Article VII, section 1 of the John Blue Trust agreement pertains to "Contributions to Trust by Company" and provides: Subject to such amendments as may be made hereto as permitted by Section 3 of Article IX of this *219 Agreement, the Company intends to make annual contributions to the Trust Fund by annual payment to the Trustee of the amounts herein agreed to be paid by the Company but does not bind itself so to do after May 31, 1961, and does not enter into any controlling liability so to do thereafter. [Emphasis supplied.] Article IX, section 1 of the John Blue Trust Agreement pertains to "Termination and Amendment of Trust Agreement" and provides in part: This Trust shall terminate upon the happening of any one or more of the following events: (a) The bankruptcy, insolvency or dissolution of the Company; (b) The adoption of a Resolution to terminate this Trust by unanimous vote of the Board of Directors of the Company and the delivery of a Certified Resolution to that effect to the Trustee. Article IX, section 3 of the John Blue Trust agreement provides in part: The Company reserves the right to change, amend, modify or alter any of the provisions of this Trust Agreement, except and the provisions of Section 3 of Article VII hereof, and the provisions of Section 2 of this Article IX hereof, at any time and from time to time, * * *. Any such change, amendment, modification or alteration *220 of this Trust Agreement shall be made pursuant to and as specified in a Resolution of the Board of Directors of the Company and shall become effective upon the filing with the Trustee of a Certified Resolution specifying the change, amendment, modification or alteration of this Trust Agreement to be made and authorizing the execution and delivery to the Trustee of an amendatory agreement to cover the same, in the form approved by counsel to the Trustee. On May 28, 1959, John Blue and Birmingham executed an agreement entitled "Amendment No. 1 to the John Blue Company, Incorporated Employees Profit Sharing Trust," amending the John Blue Trust. In a letter to John Blue dated April 28, 1961, the audit division in the office of the district director of internal revenue, Birmingham, Alabama, determined that the employees' profit sharing plan and trust met the requirements of section 401(a) and that the profit sharing trust continued to be exempt under section 501(a).
Article II, section 1 of the John Blue Trust agreement, as amended, provides in part: Subject to such amendments as may be made hereto as permitted by Section 3, Article IX of this agreement, the Company or any other *221 corporation which may become a party hereto pursuant to Article XI hereof, agress to deposit with the Trustee (within a period of time following the end of the fiscal year of the Company or such other corporation permitted by the United States Internal Revenue Code to allow the deduction of such amount) an amount of net earnings of the Company or of such other corporation as may be determined by the Board of Directors of the Company or by the Board of Directors of such other corporation prior to the end of such fiscal year but in no event an amount less than the amount computed as follows: An amount equal to fifteen percent (15%) of so much of the net earnings of the Company or of the net earnings of such other corporation during the fiscal year before deduction of Federal and State income and profits taxes, as exceeds twenty percent (20%) of the net worth of the Company or of such other corporation, viz: (capital stock, earned surplus and undistributed profits) at the close of the immediately preceding fiscal year. The amount deposited hereunder shall not, however, exceed in any year, an amount equal to fifteen percent (15%) of the total compensation otherwise paid or accrued *222 by the Company or by such other corporation during such year to such Company's or such other corporation's employees who are members at the end of such fiscal year. Article XI, section 1 of the John Blue Trust agreement as amended, provides in part: Any corporation affiliated with the Company specifically named as party of the first part through common ownership of stock, or hereafter becoming so affiliated may, or any corporation which may be a controlled subsidiary of the Company, with the written consent of such party or parties hereto and filed with the Trustees, become an additional party of the first part hereto provided such corporation: (a) is affiliated with or a controlled subsidiary of John Blue Company, Incorporated, (b) accepts, adopts, and becomes bound by all the terms, provisions and conditions of this agreement, (c) deposits with the Trustees the first applicable annual deposit determined to be the correct amount thereof and accompanied by a certificate of the secretary of the corporation to that effect, in the amount of the annual deposit to be determined as provided in Section 1 of Article II, and (d) files with the Trustees a certified resolution reciting *223 compliance with subparagraphs (a) and (b) of this Section 1. Article XI, section 3 of the John Blue Trust agreement, as amended, provides in part: If any such corporation shall become a party of the first part hereto, as provided in this Article XI, the "Company," as that term is defined in Section 2 of Article I hereof, shall mean any corporation which may become a party hereto, and shall also include the successors of any thereof. On June 1, 1964, Equipment adopted and became a party of the John Blue Trust. On May 28, 1965, John Blue and Birmingham executed an agreement entitled "Amendment No. 2 to The John Blue Company, Incorporated Employees Profit Sharing Trust." In a letter to John Blue dated June 29, 1965, the district director of internal revenue, Birmingham, Alabama, determined that the John Blue Trust, as amended, met the requirements of section 401(a) and that the trust continued to be exempt under section 501 (a). Article XI, section 2 of the John Blue Trust agreement, as amended, provides: Upon full compliance with Section 1 of this Article XI, any such corporation shall become a party of the first part hereto as though originally executing this agreement *224 as such party of the first part, and shall be entitled to the benefits of and be bound by all the terms, provisions and conditions of this agreement, effective as of the dates specified in the resolutions filed by each such corporation with the Trustee; provided, however, that any such corporation may modify or change any provision of this agreement as to itself or its employees. On September 24, 1965, Rex and Birmingham executed a trust agreement entitled "John Blue Associates Profit Sharing Trust" (hereafter Associates Trust). On October 1, 1965, Blue became a party to the Associates Trust instituted and executed by Rex. In a letter to Rex dated December 23, 1965, the district director of internal revenue, Birmingham, Alabama, stated that he had determined that the Associates Trust met the requirements of section 401(a) and that the trust was entitled to exemption under section 501(a). In a letter to Birmingham dated January 30, 1967, that district director stated that he had determined that the Associates Trust qualified for Blue and that its adoption of the trust did "not adversely affect its prior exempt status." Article I, section 2 of the Associates Trust agreement provides *225 in part: The term "Company" shall mean the party of the first part hereto, and any other corporation becoming a party hereto pursuant to the provisions of Article XI hereof, and shall also include their successors and assigns. Article I, section 3 of the Associates Trust agreement was similar to Article I, section 3 of the John Blue Trust agreement. Article II, section 1 of the Associates Trust agreement was similar to Article II, section 1 of the John Blue Trust, as amended, but percentages of ten and thirty replaced those of fifteen and twenty contained in the second paragraph of that portion of Article II, section 1 of the John Blue Trust, as amended, quoted above. Article VIII, "Contributions to Trust by Company," section 1 of the Associates Trust agreement provides: Subject to such amendments as may be made hereto as permitted by Section 3 of Article IX of this Agreement, the Company intends to make substantial and recurring contributions to the Trust Fund by annual payments to the Trustee but does not bind itself so to do and does not enter into any continuing liability so to do hereafter. [Emphasis supplied.] Article IX, section 1 of Associates Trust agreement *226 was similar to Article IX, section 1 of the John Blue Trust agreement. Article IX, section 3 of the Associates Trust agreement was similar to Article IX, section 3 of the John Blue Trust agreement. Article XI, section 1 of the Associates Trust was similar to Article XI, section 1 of the John Blue Trust, as amended. On May 23, 1967, the stockholders of the John Blue Group of companies, by and through their duly appointed agent, negotiated the sale of all issued and outstanding stock of each of the companies to petitioner.The sale agreement incorporated the employee profit sharing plans in the agreement as Exhibit D to the agreement. All such stock was acquired by petitioner on July 10, 1967, and the John Blue Group of companies were merged into petitioner on August 1, 1967. On May 26, 1967, John Blue, III, president of John Blue and an officer in Equipment, Rex, and Blue, made an announcement to key and senior employees of John Blue that the shareholders had agreed to sell all the stock of the John Blue Group to petitioner, that there would be no changes in personnel, operating procedures, or policies of the John Blue Group, and that the sale and merger would have no negative *227 effect on personnel. Seven key and senior employees of John Blue executed affidavits acknowledging the announcement by John Blue, III, and stating that John Blue, III, had assured them that the profit sharing plan would be continued by petitioner. Three of the seven affidavits contained statements that John Blue, III, had said that a contribution would be made for 1967. John Blue and Equipment, both on the accrual basis, deducted $73,515 and $5,385.49, respectively, as accrued contributions to employees profit sharing plans on their corporate income tax returns for their fiscal years ended May 31, 1967. Similarly, Rex and Blue deducted $18,255.71 and $2,006.88, respectively, as accrued contributions on their income tax returns for their fiscal years ended July 10, 1967. The four companies paid those amounts to Birmingham, as trustee, within the times prescribed by law for filing their tax returns, including extensions thereof. Petitioner submitted consolidated balance sheets of petitioner and its subsidiaries as of June 30, 1967, and a combined balance sheet of John Blue and affiliated companies as of June 30, 1967, to the Securities and Exchange Commission, Washington, *228 D.C., in connection with its Annual Report pursuant to sections 13 and 15(d) of the Securities Exchange Act of 1934 for the six-month period ended May 30, 1967. These statements reflect the amounts deducted by the four John Blue companies herein involved as "CURRENT LIABILITIES: * * * Accrued liabilities" and, in note 6 to the combined financial statements of the John Blue companies, explained the profit sharing plans and the contributions thereto for the years 1964, 1965, 1966 and the periods ended June 30, 1967. The Commissioner determined that the contributions made to the profit sharing trusts by John Blue, Equipment, Rex, and Blue were not deductible in the fiscal years of John Blue and Equipment ended May 31, 1967, and in the fiscal years of Blue and Rex ended July 10, 1967. Petitioner contends that section 404(a) (6) authorized the companies to deduct their contributions in those fiscal years by treating the payments as made on the last days of the fiscal years. Thus the sole question for decision is the applicability of section 404(a) (6). The parties agree that the trusts met the requirements of section 401(a), that the four companies were "on the accrual basis," *229 that the payments were "on account of" the fiscal years in issue, and that the payments were "made not later than the time prescribed by law for filing the [returns] for * * * [those] taxable [years] (including extensions thereof)." However, satisfaction of those requirements of section 404(a) (6) is not sufficient to establish that section's applicability to the contributions and fiscal years in issue, for section 404(a) (6) states that payments shall be deemed to have been made "on the last day of the year of accrual." (Emphasis added.) In other words, section 404(a) (6), which allows an accrual basis taxpayer to take advantage of his deduction before the "taxable year when paid" (404(a) (3)), requires not only a taxpayer who reports on the accrual basis but also a contribution liability for which accrues in the fiscal year prior to the year of payment. Chesapeake Corporation of Virginia, 17 T.C. 668, 672 (1951), Abingdon Potteries, Inc., 19 T.C. 23, 26 (1952), and West Virginia Steel Corporation, 34 T.C. 851 (1960). See also Treasury Regulations 1.404(a)-1(c). A taxpayer may not consider the liability *230 for payment as accrued until all events have occurred to fix the amount of the payment and the taxpayer's liability for it. United States v. Anderson, 269 U.S. 422 (1926), and Chesapeake Corporation of Virginia, supra. Accordingly, where a liability is contingent and not fixed, it cannot be deducted as accrued. Overlakes Corporation, 41 T.C. 503, 514-515 (1964), affd. 348 F.2d 462 (C.A. 2, 1965). The John Blue Trust agreement states that John Blue and, after June 1, 1964, Equipment "[intended] to make annual contributions to the Trust Fund" but that they did "not bind * * * [themselves] so to do after May 31, 1961, and * * * [did] not enter into any controlling liability so to do thereafter." Similarly, the Associates Trust agreement states that Rex and Blue "intended to make substantial and recurring contributions to the Trust Fund" but that that did "not enter into any continuing liability so to do hereafter." Thus in their trust agreements the four companies expressly disclaimed liability, and we have no evidence to indicate that the companies, through their boards of directors, assumed liability for the fiscal years *231 in question. We must conclude that neither John Blue nor Equipment had a fixed obligation to make a contribution as of May 31, 1967, and that neither Blue nor Rex had such an obligation as of July 10, 1967. Petitioner argues that the fact that the trusts contained "predetermined" and "definite" formulae somehow qualifies the contributions as properly deductible in the fiscal years in issue. Petitioner cites Rev. Rul. 63-117, 1963-1 C.B. 92, and Rev. Rul. 71-38, 1971-1 C.B. 130. Those revenue rulings deal with the question of whether events had occurred to fix the amount to be deducted rather than the liability for that amount. A "definite" formula can determine the extent of a liability but, alone, cannot create a liability. As stated in Rev. Ruling 63-117, 1963-1 C.B. at 93, "where an employees' profit-sharing plan provides that an employer may or may not contribute a prescribed amount, there is no definite commitment and no accruable liability." Petitioner argues that "the mere reservation, unexercised, of an employer's right to alter, interrupt, or abrogate * * * a plan" should not affect the availability of section 404(a) (6). We *232 need neither explore the bases for this argument nor rule upon its validity, for the companies involved herein did not reserve the right to alter their liability under the plans but, instead, expressly prohibited any liability without some sort of affirmative action or resolution. [3] Until the companies made commitments, no liability was incurred, and, accordingly, no deduction was available under section 404(a) (6). Finally, petitioner asks us to hold that the companies assumed liability for contributions at the time their stockholders negotiated the sale of their stock to petitioner. The fact that the sale agreement incorporated the profit sharing trust and stated that no change would be made "affecting the personnel, compensation payments or banking arrangements of any of the John Blue Group" does not indicate that the companies assumed liabilities that they had expressly disclaimed in the trust agreements. In addition, we see no basis for petitioner's argument that the statement of John Blue, III, to several employees *233 of John Blue that the companies would make contributions created enforceable contractual obligations. We do not believe that such a statement could bind companies which had explicitly disclaimed liability in agreements which could be amended only be certified resolutions of the boards of directors.
In conclusion, the four companies did not incur liabilities in the fiscal years in issue. Without such liabilities, the fiscal years ended May 31, 1967, and July 10, 1967, were not "[years] of accrual." Accordingly, section 404(a) (6) does not authorize the deduction of contributions in those fiscal years. Decisions will be entered under Rule 155. Footnotes
1. The following cases are consolidated herewith: Subscription Television, Inc., Successor by Merger to Blue Equipment Company, Inc., docket No. 259-72; Subscription Television, Inc., Successor by Merger to Rex, Inc., docket No. 260-72; and Subscription Television, Inc., Successor by Merger to Blue Company, docket No. 261-72. ↩
2. All statutory references are to the Internal Revenue Code of 1954, unless otherwise stated. ↩
3. This is the critical distinction between petitioner's case and Misceramic Tile, Inc., T.C. Memo. 1968-31↩, on which petitioner relies.