FAUCETTE COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24086.    Promulgated August 7, 1951.

Robert Ash, Esq., and *Carl F. Bauersfeld, Esq.*, for the petitioner.
*Homer F. Benson, Esq.*, for the respondent.

194

LEECH, *Judge:* The first issue presents the question of the reasonableness of the salaries paid by petitioner to its three executives in the taxable years 1945 and 1946. Petitioner has the burden of establishing the fact of reasonableness.

Petitioner is the successor of a business originally founded in 1900 for the purpose of engaging in the wholesale grocery business. It was originally organized by J. D. Faucette, father of J. E. Faucette and L. M. Faucette, president and vice-president, respectively, of petitioner since the death of their father in August 1942. P. Buchanan, secretary and treasurer, became associated with the predecessor company in 1902 and has since been connected with the business. Until 1915 the principal source of income was from the sale of groceries at wholesale. In 1915 the stock of a defunct china store was purchased and a china department was opened. Thereafter the business began to take on various lines of merchandise for sale. Petitioner operates both a wholesale and a retail business. After the death of J. D.

Faucette in 1942 the grocery business was closed out. Thereafter and during the taxable years, petitioner handled a complete line of men's, women's, children's, and infants' hosiery, glassware, china, silverware, electrical appliances, garden and farm supplies, hardware, paints, toys, notions, and other wares, carrying approximately 4,000 different articles of merchandise.

The stock of petitioner is owned by the Faucette and Buchanan families.

J. E. Faucette, president of petitioner, is 53 years of age. He was brought up in the business. While in grammar school he worked after school hours and during vacations. In 1918 he was graduated from King College and except for a period of 11 months, when he served in World War I, he has been intimately associated with the business. From 1922 to 1942 he was vice-president of petitioner. He developed the hosiery department, the main department of the business, and had complete charge of it. As president he had direct supervision of all of petitioner's activities. He was also in charge of credit and sales, had charge of personnel and all of petitioner's financing. His normal working hours were from 6 : 45 a. m. to 6 : 00 p. m. Because of the difficulty of procuring merchandise, he was required to put in considerable overtime.

L. M. Faucette, vice-president of petitioner, was also raised in the business. He became a full-time employee in 1928, after being graduated from college and after receiving training in retail merchandising from F. W. Woolworth Co. Since 1928 he has been the manager of the retail store and has charge of the buying and selling of retail merchandise. He was required to travel about one fourth of his time to obtain merchandise and to find substitutes for merchandise which had been scarce or entirely unavailable. In order to procure an adequate supply of china for the retail department, he opened a manufacturing department for the decoration of chinaware.

P. Buchanan, secretary and treasurer of petitioner during the taxable years, was in charge of the notions department, doing the buying for that department. He also had charge of the shipping and receiving departments, which included the warehouse. His normal working hours were from 7 : 30 a. m. to 5 : 30 p. m., and during the period in question he was required to work overtime to a considerable extent.

The petitioner's continuous growth and increase in gross sales from $415,603.72 in 1939 to $1,352,242.80 in 1946, in the difficult war period, are convincing evidence that these three executives were experienced, competent, aggressive, and resourceful. After the death of J. D. Faucette these officers effected advantageous changes in policy. They closed out the grocery department because the margin of profit was small; the preferred stock was retired and the capital increased by the sale of additional common stock; the mortgage indebtedness and

the bank loans were paid off; they changed the policy of selling for cash and inaugurated credit service and later a deferred payment plan. The record shows that petitioner has paid dividends since 1935 and that the dividend distributions were increased in the taxable years 1945 and 1946.

This record, however, is rather unusual in that petitioner offered no evidence of salaries paid for similar services by comparative businesses, which is recognized as one of the most satisfactory tests; no expert opinion testimony was presented, and the two executives who testified did not express any opinion as to the reasonableness of the salaries paid. Petitioner relies upon the evidence as to gross sales, the net profits, the dividends paid, the capital investment and the evidence as to the experience and ability of the three executives, their efficient management, and the time devoted by them to the business. We agree.

The respondent, in determining the deficiency, has disallowed in the taxable years all increase in salaries over what was paid in 1943 and 1944. We are unable to accept such an arbitrary appraisal. The salaries paid to each of such officers in 1943 and 1944 were $16,140 to J. E. Faucette, $10,560 to L. M. Faucette and $10,860 to P. Buchanan.

During the years 1943 and 1944 the Wage Stabilization Act, freezing salaries and wages, was still in effect. The minutes of a meeting of the directors held on March 9, 1945, disclose that it was the intention of the directors to adjust the salaries of petitioner's executive officers when the salary freeze was removed. On November 6, 1945, after the controls were lifted, the directors fixed the salary of J. E. Faucette at $25,344, and of L. M. Faucette and P. Buchanan at $16,896 each. The aggregate salaries of $59,136 fixed for 1945 were 5.03 per cent of the gross sales of $1,174,668.57. The ratio of total salaries to gross sales in the years 1941 and 1942 was 5.49 per cent and 6.39 per cent, respectively.

After considering all the facts disclosed by this record, we think the amounts paid to petitioner's three top executives in the taxable year 1945 were reasonable, and have so found as a fact.

For the taxable year 1946 the salary of J. E. Faucette was increased to $30,413 and the salaries of J. E. Faucette and P. Buchanan to $20,275 each. The aggregate salaries paid in 1946 of $70,963 bear a ratio of 5.25 per cent to the gross sales of $1,352,242.80. Although the gross sales increased in 1946 over 1945, the net profits decreased from $79,962.73 in 1945 to $59,548.92 in 1946. It is obvious that the increase in gross sales was largely the result of the general increase in the sales price of merchandise and the decrease in net profits was due to increase in the cost of operation.

We are unable to find any evidence in this record to support the increase in salaries for the year 1946. The war with Japan ended

in August 1945. Thereafter the availability of consumer merchandise had somewhat improved and the demand by consumers had greatly increased. There is no claim made that petitioner's officers put in more time or effort in 1946 than in 1945 or that the responsibilities or difficulties experienced during the war years increased in 1946. All of the new policies inaugurated by the new officers, upon which petitioner relies in support of the 1945 salary increases, were put into effect prior to the taxable year 1946. In the light of such circumstances we do not regard the increase in the salaries of the executives in 1946 as warranted. We have found as a fact that the amounts paid to these three executives in 1945 constitute reasonable compensation for the services rendered by each to petitioner in the taxable year 1946.

We, therefore, hold that petitioner is entitled to deduct in each of the taxable years 1945 and 1946 the amount of $59,136, representing salaries paid to its three executives as ordinary and necessary business expenses under section 23 (a) (1) (A) of the Internal Revenue Code.

The second issue presents the question whether petitioner is entitled to deductions in the respective taxable years 1945 and 1946 of the amounts contributed to educational institutions.

In 1945 petitioner's directors orally authorized a contribution of $2,500 to King College, in Bristol, Tennessee. In that year petitioner drew a check payable to the First National Bank for the purchase of Government bonds, which were given to King College. Petitioner, on an accrual basis of accounting, accrued the amount of $2,500 on its books and claimed the deduction upon its return for that year. The check, however, was not paid until January 26, 1946. The respondent denied the deduction because the check was not paid in 1945.

In 1946 the directors similarly authorized a contribution of $1,200 to Emory and Henry College. The amount was likewise accrued in 1946 and claimed as a deduction on its return for that year. The check was not paid until February 3, 1947, and the respondent denied the deduction because the check was not paid in 1946.

Petitioner, in its petition to review the deficiency determined by the respondent for the years 1945 and 1946, did not assign as error the disallowance of such claimed deductions because section 23 (q) at that time permitted deductions for contributions by corporations on an accrual basis only in the year paid.

By section 3 of Public Law 378, 81st Congress, approved October 25, 1949, section 23 (q) of the Internal Revenue Code was amended to permit corporations on an accrual basis to elect to deduct contributions, authorized by the directors, in the year authorized provided the payment was actually made within 2½ months after the close

of such year.[1] By section (c) the amendment is made applicable to taxable years beginning after December 31, 1942. With respect to years beginning after December 31, 1942, and before January 1, 1949, election is to be made within one year after the date of the enactment of the act, and the taxpayer must consent in writing to the assessment in any other taxable year of any deficiency to the extent resulting from such election.

Under date of February 10, 1950, and within the prescribed period, petitioner addressed a letter to the Commissioner of Internal Revenue at Washington, D. C., which letter was received on February 14, 1950. Therein petitioner stated that it elected to take such deductions in the respective taxable years 1945 and 1946, when the amounts were accrued, and consented to the assessment of any deficiency to the extent resulting from such election.

The only argument advanced by the respondent against the allowance of the deductions in the respective taxable years in which the contributions were authorized and accrued is that petitioner's board of directors did not authorize the contributions in writing. He bases his position on Treasury Regulations 111, sec. 29.23 (q)–1 as amended by T. D. 5796 which contains a provision that the authorization of the directors must be in writing.

Petitioner concedes the contributions in question were not authorized by its directors in writing. The testimony, however, is uncontradicted that the contributions were in fact authorized by the board of directors.

The statute is silent as to the manner in which the authorization is to be evidenced. It merely provides that the contribution be authorized by the board of directors in the year of accrual. (See *infra*).

---

[1] SEC. 3. CHARITABLE CONTRIBUTIONS BY CORPORATIONS ON ACCRUAL BASIS.

(a) Section 23 (q) of the Internal Revenue Code (relating to charitable and other contributions) is hereby amended by adding at the end thereof the following :

"In the case of a corporation reporting its net income on the accrual basis, at the election of the taxpayer any contribution or gift payment of which is made after the close of the taxable year and on or before the 15th day of the third month following the close of such year shall, for the purposes of this subsection, be considered as paid during such taxable year, if, during such year, the board of directors authorized such contribution or gift. Such election shall be made only at the time of the filing of the return for the taxable year, and shall be signified in such manner as the Commissioner, with the approval of the Secretary, shall by regulations prescribe."

\*     \*     \*     \*     \*     \*     \*

(c) The amendments made by this section shall be applicable with respect to taxable years beginning after December 31, 1942. If the election provided for in such amendments is made for any taxable year beginning before January 1, 1949—

(1) the election for such year may be made (in lieu of at the time of the filing of the return for such year) at any time within one year after the date of the enactment of this Act : but

(2) such election shall not be allowed unless the taxpayer, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, consents in writing to the assessment (within such period as may be agreed upon) of any deficiency, to the extent resulting from such election, for any other taxable year of the taxpayer, even though on the date of the filing of such consent such assessment is otherwise prevented by the operation of any law or rule of law.

"Authorization" is defined by Webster's New International Dictionary to mean "act of authorizing; sanction; warrant." It is a fact. And, as such, it may have occurred orally and may not have been reduced to writing, i. e., in the form of a written resolution. That such corporate authority, particularly where as here the corporation is relatively small and closed, may be evidenced orally. *Benz Brothers Co.*, 20 B. T. A. 1214; *Reub Isaacs & Co.*, 1 B. T. A. 45; *The Parisian*, 2 B. T. A. 415; *W. H. Harris Grocery Co.*, 3 B. T. A. 216.

The purpose of the pertinent amendment was to liberalize the rule with respect to the time of payment of contributions authorized by the board of directors in the case of corporations on the accrual basis.[2]

We think that the regulation of the Commissioner providing that the authorization by the directors must be in writing is invalid as a limitation upon and inconsistent with the statute which it attempts to construe. *International Ry. Co.* v. *Davidson*, 257 U. S. 506; *Manhattan General Equipment Co.* v. *Commissioner*, 297 U S. 129.

We therefore hold that petitioner is entitled to a deduction of the amount of $2,500 in the taxable year 1945, as a contribution to King College, and of the amount of $1,200 in the taxable year 1946, as a contribution to Emory and Henry College, pursuant to the provisions of section 23 (q) of the Internal Revenue Code as amended.

*Decision will be entered under Rule 50.*

[2] Senate Finance Committee Report No. 831, 81st Cong., 1st Sess., 1949–2 C. B. 289.