[Civ. No. 5218.   Fourth Dist.   Nov. 9, 1956.]

COACHELLA VALLEY LUMBER AND SUPPLY COMPANY, INC. (a Corporation), Appellant, v. E. CLYDE HOLLENBECK et al., Respondents.

Thompson & Colegate, Roy W. Colegate and H. M. Dougherty for Appellant.

Best, Best & Krieger, James H. Krieger and Arthur L. Littleworth for Respondents.

MUSSELL, J.—This is an action to set aside the sale and transfer of one share of stock in defendant corporation, made by Lorena J. Young as president of plaintiff corporation, to E. Clyde Hollenbeck, one of the defendants herein. It is alleged in the complaint that the sale was made without authority or action by plaintiff corporation and was therefore invalid; that the defendant E. Clyde Hollenbeck occupied a position of trust and confidence with Lorena J. Young; that he induced her to sell the share of stock involved for less than its value; that plaintiff is the owner of said stock and that defendant Hollenbeck has no right, title or interest therein. A trial was had by the court without a jury and a judgment was rendered for defendants, from which plaintiff appeals.

In 1947, James W. Young owned some 85 per cent of the stock of the Coachella Valley Lumber and Supply Company, Inc., a corporation (hereinafter referred to as "plaintiff corporation"), and was conducting a lumber and hardware business in Indio, in Riverside County. Defendant Hollenbeck started a lumber business in Indio in partnership with one Harry Hartsell and one of their suppliers was plaintiff corporation. In the latter part of 1947 Young purchased the interest of Harry Hartsell and Young and Hollenbeck operated this business for a short period of time until it was incorporated under the name of H. & H. Lumber and Hardware Company, Inc., a corporation, (hereinafter referred to as "defendant corporation.") This new corporation issued 84 shares of stock. Forty-two of these shares were issued to Young personally and were later turned in and reissued to plaintiff Coachella Valley Lumber and Supply Company, Inc. The remaining 42 shares were issued and held by Hollenbeck. James Young died on August 25, 1951. Two days later Hollenbeck called on Lorena Young and offered to help her out in any way he could and offered to lend her money if she needed it. About two weeks later he saw her again and suggested she employ a good attorney or see a business consultant. This advice was repeated on several occasions and in September, 1951, Hollenbeck took Mrs. Young to Riverside to the office of Elden Smith, president of the Citizens National Trust and Savings Bank. Mr. Smith called in Mr. Steves, the trust officer of the bank, and from that time on Steves was Mrs. Young's adviser in business affairs. She asked him to recommend a law firm and, while he refused to do this, he gave her the names of several responsible firms. Shortly thereafter

she engaged the firm of attorneys who represented her at all times thereafter.

Lorena Young at one time was employed as bookkeeper for the plaintiff corporation and she had been an officer of the company since its incorporation. After her husband's death, she, in September, 1951, assumed the responsibilities of president of the Valley Lumber Company and at the same time she was a director in the defendant lumber company, and, according to her testimony, was secretary of that company from its beginning. Shortly after her husband's death she also assumed the job of vice-president of this corporation. Both before and after her husband's death Mrs. Young had access to the books, records and financial statements of both companies. She assumed an active role in the management of plaintiff corporation, and at the time of the sale and transfer of the stock here involved, she was president of the corporation.

Hollenbeck testified that soon after Mr. Young's death he, Hollenbeck, had a conversation with Mrs. Young in which she asked him if he would consider leaving his position to become manager of plaintiff corporation; that he agreed, was made director and vice-president of plaintiff corporation in 1951, and started as manager on or about January 1, 1952; that he had several conversations with Mrs. Young about buying into the plaintiff corporation; that in May or June of 1952 he asked Mrs. Young if she would consider selling one share of stock in the defendant corporation to him in order that he might have controlling interest in the corporation so that in the event of a sale of the plaintiff corporation or "in the event that she would some day remarry and it would change the picture, then I might have the opportunity of going my own way, whether or not I sold with the corporation, if it sold, that is, the Coachella Valley Lumber and Supply, or whether or not I continued on in the business"; that he asked Mrs. Young if she would like to talk it over with Frank Cooper, who was also a shareholder in plaintiff corporation, and also with Mr. Steves, who was advising her at that time; that he next talked to Mrs. Young in late June or early July of 1952 and then asked her if she had reached a decision on the sale of one share of the stock in the defendant corporation; that she said "Yes," and he stated that he would bring the share book and the seal with him on a later occasion and would go ahead and issue stock "in lieu of the one to be picked up"; that in one of the conversations with Mrs. Young he told her that the price of the share of stock involved, to wit, $551, was

taken from the first quarterly financial statement of 1952, the book value of the stock; that Mrs. Young then said, ''Whatever it is.''

Mrs. Young testified that late in May, 1952, after she had been to Riverside to talk to Mr. Steves, she had a conversation with Hollenbeck in which she told him that Mr. Steves was going to help her find a buyer for the business; that Hollenbeck expressed concern in the event he would find himself with a new partner if such a sale took place and that he wanted some protection; that he asked her if she would consider selling him a share of defendant corporation stock so that he would not have that worry; that she told him she would not mind doing that ''because he promised me at that time he would return the share of stock if the business was not sold.'' Hollenbeck denied making any such promise or any promise to return said share of stock to Mrs. Young. Mrs. Young testified further that in May, 1953, she told Hollenbeck she had decided not to sell the business, that she was going to marry Kenneth Eckert, and that if they were married, he would help her run the business and she would no longer need Hollenbeck; that at that time she asked Hollenbeck to sell the share of the corporation stock back to her and he said he would consider it.

On or about July 2, 1952, Hollenbeck took stock certificate Number 3 for 42 shares of defendant corporation, issued to plaintiff corporation, to Mrs. Young and she signed a transfer thereof in blank ''as president for the company.'' At the same time Hollenbeck brought over a new stock certificate, Number 7, in defendant corporation, for 41 shares, issued to plaintiff corporation. This certificate was signed by Hollenbeck as president and Frank Cooper as secretary of defendant corporation. Hollenbeck then delivered a check to Mrs. Young for $551, which she accepted and deposited in the plaintiff corporation account. Hollenbeck, as president of defendant corporation, then issued certificate Number 6 (of defendant corporation) to himself for one share, which gave him a total of 43 shares, with Coachella Valley Lumber and Supply Company owning 41. Frank Cooper, the only other stockholder in plaintiff corporation besides Mrs. Young, was fully aware of these stock transactions and consented thereto. He was secretary of the defendant corporation and in that capacity signed a new certificate, Number 7, for the 41 shares issued to plaintiff corporation. On July 27, 1953, plaintiff corporation gave notice of rescission and demanded the return of the shares

of stock involved, tendering a check for $551 therefor, and this action was filed December 18, 1953.

After the trial was concluded, the parties stipulated that Lorena Eckert (formerly Lorena Young), Kenneth Eckert and Clyde Hollenbeck would submit to a lie detector test, to be arranged by the court on its terms, and that the results of such tests might be considered by the court in determining the credibility of said witnesses. The case was reopened for this purpose and a report of the examiner filed. The questions asked the witnesses on the test related to whether there was an agreement for an outright sale of the share of stock involved without any "strings attached." The report of the examiner indicated that "deception" was indicated in the answers given by defendant Hollenbeck to the questions asked and that no deception was indicated in the answers given by Mrs. Eckert and her husband.

The trial court found that "certificate No. 3 was endorsed by Lorena J. Young, as president of Coachella Valley Lumber & Supply Co., Inc., and voluntarily surrendered by her as president of said company to E. Clyde Hollenbeck, as president of defendant H. & H. Lumber & Hardware Company, Inc., on or about July 2, 1952, in exchange for said Certificate No. 7, and the sum of Five Hundred Fifty-one Dollars . . . as consideration for the one (1) share of stock which was subtracted from said Certificate No. 3 and sold to E. Clyde Hollenbeck"; that the value of the stock was more than $551; that Hollenbeck did not occupy a position of special trust and confidence with Lorena Young with respect to the sale by plaintiff of its stock to E. Clyde Hollenbeck; that all facts and terms involved in the sale of said share of stock were well known to plaintiff and said Lorena Young or were expressly made known to plaintiff before said transaction was completed and that plaintiff and Lorena Young consented to said sale with full knowledge of all facts connected therewith; that plaintiff corporation has been guilty of laches and unreasonable delay; that on or about July 2, 1952, the transaction was completed by plaintiff and it was not until on or about July 27, 1953, that plaintiff offered to restore to defendants said money; that "it is also true that plaintiff has never offered to restore to defendants said Certificate No. 7, representing forty-one (41) shares of the capital stock of defendant corporation, but said Certificate No. 7 has been retained by plaintiff as a valid issuance of forty-one (41) shares of the capital stock of defendant corporation"; that "plaintiff and

its president, Lorena J. Young, had every opportunity to investigate all matters involved in said transaction as the same were represented by defendant E. Clyde Hollenbeck, and it is true that plaintiff and its president, Lorena J. Young, knowing full well all of the affairs of defendant corporation, and particularly its financial status, sold the one share of stock now evidenced by Certificate No. 6 of defendant corporation to the defendant E. Clyde Hollenbeck for a fair, reasonable and adequate consideration of Five Hundred Fifty One Dollars . . ., and did not demand the return of said share until on or about July 27, 1953.''

These findings are supported by substantial evidence and therefore cannot be here disturbed. While there was a conflict in the testimony relative to the terms of the sale and while it was stipulated that lie detector tests be conducted and that the report thereon might be considered by the court, the determination of the questions of fact involved and the weight to be given to the testimony of the various witnesses were matters to be determined by the trial court.

It is claimed by appellant that Clyde Hollenbeck was a fiduciary; that he acquired the share of stock involved without corporate action or authority; that he violated his trust and failed to fulfill his promise to reconvey said stock, and that the trial court failed to fully determine the issues before it. We do not agree with these assertions.

The finding that Hollenbeck did not occupy a position of trust and confidence with Lorena Young with respect to the sale of the share of stock involved is substantially supported by the evidence that Hollenbeck was an employee and comanager with Frank Cooper, secretary of the corporation; that Hollenbeck advised Mrs. Young to employ a good attorney or see a business consultant, and that she followed this advice; that she was familiar with the affairs of both corporations and was president of plaintiff corporation, withdrawing therefrom approximately $14,000 per year as salary and interest in the business. While the evidence indicates that Hollenbeck and Mrs. Young were friendly, such a relationship, without something further, is not sufficient to establish a confidential relationship. (15 Cal.Jur.2d, Deeds, § 29.)

The finding that plaintiff corporation consented to the sale and transfer of the share of stock involved is supported by the testimony of Mrs. Young that she endorsed the certificate, Number 3, transferring 42 shares of stock of defendant corporation, that she deposited the check for $551 paid for

the share involved in the corporation account, and deposited the new certificate for 41 shares in the Coachella stockbook. She was the only person beneficially interested, owning 85 per cent of the stock, except Frank Cooper, who knew and consented to said sale. The financial statement of plaintiff corporation for 1952 showed that the corporation owned only 41 shares of defendant corporation stock and the purchase price of the one share involved was kept by the plaintiff corporation for approximately 13 months before an attempt was made to rescind the sale. It is true that no directors' meetings were held or corporate minutes kept relative to said sale. However, as is said in *Brainard* v. *De La Montanya,* 18 Cal.2d 502, 511 [116 P.2d 66] :

"It is immaterial that no formal directors' meetings were held. While it is true that a corporation ordinarily acts by resolutions which are adopted at formal meetings of its board of directors and are entered in its minutes, it is also true that decisions reached by all the directors and stockholders of a closed corporation at informal conferences will be binding upon the corporation when, by custom and with the consent of all concerned, corporate formalities have been dispensed with and the corporate affairs have been carried on through such informal conferences." (Citations.)

In *Mannon* v. *Pesula,* 59 Cal.App.2d 597 [139 P.2d 336], no formal meeting of the corporation was held or minutes kept. However, two directors, the majority stockholders and the president and secretary of the corporation, consented to a sale of the corporate property and it was held that the consent of a third director and stockholder was not required.

Where, as here, the action of Mrs. Young was ratified by the corporation by the acceptance of the benefits of the sale, it is binding on the corporation. (*Gribble* v. *Columbus Brewing Co.,* 100 Cal. 67, 71 [34 P. 527] ; *Underhill* v. *Santa Barbara etc Co.,* 93 Cal. 300, 312 [28 P. 1049].)

Appellant claims that the price paid for the stock involved was inadequate. However, this alone is not sufficient ground for rescinding the contract of sale. Here, the parties were both in a situation to form an independent judgment concerning the transaction and acted knowingly and intentionally. Under such circumstances the sale is not invalid for inadequacy of consideration. (*Hallidie* v. *First Federal Trust Co.,* 177 Cal. 600, 604 [171 P. 431].)

Appellant complains of the trial court's refusal to make a finding on the alleged promise of Hollenbeck to re-

transfer the stock involved to Mrs. Young. However, the complaint contains no allegation of such a promise, by amendment or otherwise. There was a conflict in the evidence concerning the claimed promise and the court's finding that E. Clyde Hollenbeck is entitled to 43 shares of defendant corporation stock and the finding that all conflicting evidence is resolved in favor of defendants and against plaintiffs amounts to an implied finding that defendant Hollenbeck did not agree to resell or retransfer said stock to Mrs. Young. It follows that the failure to specifically find on the issue of a promise to retransfer the stock did not constitute reversible error. The findings made are supported by substantial evidence and support the judgment. It was therefore unnecessary to find as to this issue. (*Horney* v. *Horney,* 118 Cal.App.2d 679, 682 [258 P.2d 555].)

The trial court also found that the appellant corporation was guilty of laches in its attempt to set aside the transfer of the said stock. This finding is also supported by substantial evidence for the record discloses that more than a year elapsed from the time of the sale until the attempted rescission. There are many cases in which delays for a shorter period than one year have been held fatal to the right to rescind (*King* v. *Los Angeles County Fair Assn.,* 70 Cal.App.2d 592, 596 [161 P.2d 468]), and we cannot say, as a matter of law, that the trial court's finding in this respect is not supported by the record.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.