PRECISION INDUSTRIES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6273-73.    Filed August 19, 1975.

*Allan Hull,* for the petitioner.
*James E. Dunn, Jr.,* for the respondent.

DRENNEN, *Judge:* Respondent determined a deficiency in petitioner's income tax for the taxable year ended March 31, 1970, in the amount of $8,457.73.

The sole issue for determination is whether petitioner, an accrual basis taxpayer, had incurred a fixed liability in the fiscal year ended March 31, 1970, to contribute the sum of $16,200 to a qualified profit-sharing plan. If petitioner was obligated to make this payment as of the end of the fiscal year, then it could properly deduct the contribution in that year under section 404, I.R.C. 1954.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner Precision Industries, Inc. (hereinafter Precision), is a corporation with its principal place of business located at 13410 Enterprise Avenue, Cleveland, Ohio.

During the years in issue, petitioner's president and chief executive officer was Otto A. Ahlegian (hereinafter Ahlegian), and his wife, Dorothea Ahlegian, was vice president and secretary-treasurer of Precision. Otto and Dorothea Ahlegian were the only directors of petitioner.

Petitioner is on the accrual method of accounting with its fiscal year ending March 31. Petitioner filed its Federal income tax return for the taxable year ending March 31, 1970, with the Internal Revenue Service Center, Cincinnati, Ohio, on September 10, 1970, pursuant to an extension of time granted until September 15, 1970.

Euclid National Bank of Cleveland, Ohio, established a Master Profit-Sharing Trust Agreement and Plan on August 15, 1969. Petitioner formally adopted this plan, effective as to it on April 1, 1969, by executing an adoption agreement sometime during its fiscal year ended March 31, 1970. It contributed $100 to the bank as trustee under the plan on March 10, 1970.

Under article I of this plan, the term "corporation" was defined as any corporation that has elected to adopt this plan and has executed the adoption form. Petitioner, by executing the adoption form, came within this definition.

Article 4 of the plan provides guidelines for contributions by the corporation. Section 4.2 of the plan provides in pertinent part:

4.2 In addition, the Corporation from time to time may pay to the Trustee as contributions to the Trust such further amounts as it deems fit, which shall be received, administered and disbursed by the Trustee for the purposes of and in accordance with the provisions of this Agreement; provided, however, that such contributions shall not exceed the maximum amount allowable as a deduction for such year under Section 404 of the Internal Revenue Code or other applicable statute as the same now exists or may hereafter be amended. * * *

Additionally, section 4.6 states:

4.6 Prior to the close of each year commencing with the first year with respect to which contributions shall be made to this trust, the Board of Directors of the Corporation shall determine the amount to be contributed for such year, if any, as provided in Paragraph 4.2 above, and shall cause such amount to be accrued as a liability to the trust on the books of the Corporation. The term "Income" as used in Paragraph 4.1 above, shall mean net operating profits of the Corporation or earned surplus.

The parties agree that the plan constituted a qualified profit-sharing plan as defined by section 401 of the Internal Revenue Code of 1954.[1]

Following the end of its fiscal year of March 31, 1970, and before its tax return was due under the extension granted by the Commissioner, the petitioner, on July 27, 1970, contributed an additional $16,200 to the profit-sharing plan. This additional contribution plus the initial $100 constituted 15 percent of the total compensation of the employees participating in the plan (apparently 17 in number) for the petitioner's fiscal year ended March 31, 1970.

---

[1] All section references are to the Internal Revenue Code of 1954 effective in 1969 and 1970, unless otherwise indicated.

On March 31, 1970, the petitioner's books and records contained no formal resolution of the board of directors specifying how much would be contributed to the profit-sharing plan relative to the taxable year ended March 31, 1970, nor was any such formal resolution in existence on that date.

Petitioner, in its return for the taxable year ended March 31, 1970, claimed a deduction for the entire $16,300 contributed to the profit-sharing plan. Respondent disallowed this deduction to the extent of $16,200 based on his determination that petitioner did not obligate itself to pay this additional amount in the fiscal year ended March 31, 1970. Respondent concluded that since petitioner did not accrue a liability of $16,200 prior to March 31, 1970, it could not claim a deduction for this amount in that taxable year.

### OPINION

The petitioner, Precision, is an accrual basis taxpayer with a fiscal year ended March 31. Sometime in either February or March of 1970, petitioner adopted the master employee profit-sharing plan of Euclid National Bank of Cleveland. The plan had no definite contribution formula, but allowed the directors of the corporation to establish for each year the amount to be contributed to the plan provided that the contributions shall not exceed the maximum amount allowable as a deduction for such year under section 404.

On March 10, 1970, during the fiscal year ended March 31, 1970, petitioner contributed $100 to the profit-sharing plan. On July 27, 1970, during the fiscal year ended March 31, 1971, petitioner contributed an additional $16,200 to the profit-sharing plan.

The only issue for resolution is whether the contribution of $16,200 can be deducted by petitioner for its fiscal year ended March 31, 1970.

Section 404(a) of the Code provides that contributions paid by an employer to or under a qualified profit-sharing plan shall be deductible under that section, subject to certain conditions and limitations. Section 404(a)(3)(A) places limits on deductible contributions to profit-sharing plans and states in pertinent part:

(A) LIMITS ON DEDUCTIBLE CONTRIBUTIONS.—In the taxable year when paid, if the contributions are paid into a stock bonus or profit-sharing trust, and if such taxable year ends within or with a taxable year of the trust with respect

to which the trust is exempt under section 501(a), in an amount not in excess of 15 percent of the compensation otherwise paid or accrued during the taxable year to all employees under the stock bonus or profit-sharing plan. * * *

Section 404(a)(6) covers taxpayers on an accrual basis and states that for purposes of paragraph 404(a)(3)—

a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made not later than the time prescribed by law for filing the return for such taxable year (including extensions thereof).

Section 1.404(a)-1(c), Income Tax Regs., specifies that section 404(a)(6)—

is intended to permit a taxpayer on the accrual method to deduct such accrued contribution or compensation in the year of accrual, provided payment is actually made not later than the time prescribed by law for filing the return for the taxable year of accrual (including extensions thereof) but this provision is not applicable unless during the taxable year on account of which the contribution is made the taxpayer incurs a liability to make the contribution, the amount of which is accruable under section 461 for such taxable year. * * *

Additionally, this Court has consistently held that the contribution must have been properly accrued, in the sense that accrual is understood for tax-accounting purposes, in the year for which the deduction is claimed. *West Virginia Steel Corp.*, 34 T.C. 851 (1960); *Abingdon Potteries, Inc.*, 19 T.C. 23 (1952); *Chesapeake Corp. of Virginia*, 17 T.C. 668 (1951).[2] In order for the item to be properly accrued, all events must have occurred which fixed the amount of the contribution and the petitioner's liability to pay it. *United States v. Anderson*, 269 U.S. 422 (1926).

The only issue before this Court is whether the petitioner incurred the liability to make the contribution in the amount of $16,200 prior to March 31, 1970, so that it could be properly accrued for that fiscal year. Petitioner contends that it was so obligated, but we must rather reluctantly disagree. There is simply insufficient evidence to prove that petitioner became obligated on or before March 31, 1970, to contribute any specific amount to the plan for that year.

The parties have stipulated that on March 31, 1970, petitioner's books and records contained no formal resolution of the board of directors specifying how much would be contributed to the plan relative to the year ending March 31, 1970, nor was

[2] See also *Subscription Television, Inc.*, T.C. Memo. 1974-107; *Misceramic Tile, Inc.*, T.C. Memo. 1968-31.

any such formal resolution in existence of that date. The only evidence we have relative to that point is the uncorroborated testimony of Ahlegian.

Otto A. Ahlegian, the president of petitioner and one of its two directors, testified that prior to his execution of the adoption form of the bank's master profit-sharing plan on behalf of Precision in February or March 1970, his wife, the other director of petitioner, was aware of the proposed adoption and consented to it.

Ahlegian also testified that he orally informed the employees of petitioner on two separate occasions that the corporation was going to make contributions to a profit-sharing plan in the amount of 15 percent of their compensation. According to Ahlegian, it was known by the summer of 1969 to both the management and employees of petitioner that the fiscal year ending March 31, 1970, was going to be extremely profitable. Furthermore, he asserted that due to the favorable business conditions, the employees would expect a raise and the profit-sharing plan was conceived to assuage this desire.

Ahlegian contends that he first told the employees that an amount equivalent to 15 percent of their compensation would be paid into a profit-sharing plan benefiting them prior to the employees' vacation in the last week of July and the first week of August of 1969.

He also testified that he again told the employees of the proposed contribution after he executed the adoption form of the bank's master plan and paid the initial $100 contribution. This would have occurred after March 10, 1970, but we do not know if it was prior to the end of the fiscal year on March 31, 1970.

Petitioner argues that these oral representations to the employees coupled with the informal agreement by the directors to adopt the plan clearly establish that Precision incurred an accruable liability in fiscal year ended March 31, 1970, to pay 15 percent of the employees' total contribution into the plan.

We cannot agree. First, we cannot find that Ahlegian's uncorroborated testimony regarding these statements to the employees constitutes sufficient evidence to show categorically that these oral notices were in fact made. Additional testimony from any of the employees to whom the statements were allegedly made

would have greatly aided petitioner.[3] Moreover, even assuming that such oral representations were made to the employees, under the existing evidence, we cannot conclude that such statements by themselves would establish a liability of petitioner which would be properly accrued and deductible for the fiscal year ended March 31, 1970.

Clearly, the second alleged communication to the employees is of little aid to petitioner because we do not even know whether it was given prior to March 31, 1970. And the first oral notice was allegedly given to the employees before petitioner adopted the plan—in fact before the bank formally established the plan by signing the trust agreement and plan on August 15, 1969. There is no evidence that Ahlegian knew what the "maximum contribution" under the plan would be at that time. Certainly no liability could have been incurred by petitioner to contribute any amount to the plan prior to the time it was established, its terms were known, and it was adopted by petitioner.

The plan itself provides that prior to the close of each year commencing with the first year with respect to which contributions will be made to the trust, the board of directors of the corporation-participant shall determine the amount to be contributed for such year; and this would be normal corporate procedure where the plan had no definite formula for contributions, as was the case here. Yet there is no evidence that the board of directors of petitioner even considered the amount to be contributed prior to March 31, 1970. The plan also provided that after the directors determine how much is to be contributed they shall, prior to the close of each year, "cause such amount to be accrued as a liability to the trust on the books of the Corporation." There is no evidence that this requirement was met prior to March 31, 1970. We realize that in a small, closely held corporation such as petitioner actions taken by the board of directors are often informal, but there should be some positive evidence that action was taken that incurred a liability. The plan had no definite contribution formula and did not require the contribution of any amount, so no liability could have been incurred by petitioner by the terms of the plan itself.

Petitioner has cited and relies on three revenue rulings to sustain its position that oral notification to the employees of the

---

[3] Compare *Aero Rental,* 64 T.C. 331 (1975).

amount to be contributed to the plan in the year in question is sufficient to create an accruable liability. Rev. Rul. 61-127, 1961-2 C.B. 36; Rev. Rul. 57-88, 1957-1 C.B. 88; Rev. Rul. 55-446, 1955-2 C.B. 531. These revenue rulings are inapposite to the case at bar.

The crucial distinction which renders those revenue rulings inapplicable is that the plan under consideration in each of the revenue rulings contained a specific formula for determining the amount of the contribution. Consequently, under the facts in those rulings, further action by the directors of the corporation in the taxable year in question to fix the liability of the corporation was unnecessary. In those situations, the deductible contributions were definitely determinable through a formula in effect prior to the end of the taxable year and the employer had definitely obligated itself, prior to the end of the taxable year, to make the payment by giving oral or written notice to the employees.

Under circumstances similar to those here involved, this Court has cited with approval Rev. Rul. 63-117, 1963-1 C.B. 92, 93, for the proposition that "where an employees' profit-sharing plan provides that an employer may or may not contribute a prescribed amount, there is no definite commitment and no accruable liability."[4] That proposition is applicable here, and in the absence of any evidence that petitioner had taken any positive action prior to April 1, 1970, that would bind it to contribute an additional $16,200 to the profit-sharing trust for its fiscal year ending March 31, 1970, we cannot find that its liability became fixed or that that amount was accruable in its fiscal year 1970.

It is unfortunate that if petitioner intended to contribute to the trust for the benefit of its employees the maximum amount allowable under the law for its fiscal year 1970 that it did not take the requisite action to obligate itself to do so before the end of that year. But petitioner agrees that in order to get the deduction for fiscal 1970 its liability for the contribution must have become fixed, and thus accruable, by the end of the year, and that payment alone within the grace period provided by section 404(a)(6) is not enough. Since we conclude that petitioner's liability to make the additional contribution was not fixed by March 31, 1970, we must agree with respondent that the

---

[4] See *Subscription Television, Inc., supra.*

$16,200 contribution to the trust made on July 27, 1970, is not deductible in petitioner's fiscal year ending March 31, 1970.

*Decision will be entered for the respondent.*