LOZANO, INC., PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2371–75.   Filed June 9, 1977.

*Frank E. Clohan,* for the petitioner.
*Thomas F. Kelly,* for the respondent.

SIMPSON, *Judge:* The Commissioner determined a deficiency of $9,376 in the petitioner's Federal corporate income taxes for its taxable year ending November 30, 1971. The sole issue for decision is whether the petitioner properly accrued, during the year in issue, a contribution to its profit-sharing plan.

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioner, Lozano, Inc. (Lozano), is a California corporation with its principal place of business in Mountain View, Calif. It filed a Federal corporate income tax return for its 1971 taxable year with the Internal Revenue Service

Center, Fresno, Calif. The petitioner follows the accrual method of accounting.

The petitioner's business consists of a combination carwash and service station, which it has operated since 1961. Prior to that time, the business was conducted as a sole proprietorship. During the year in issue, the petitioner's stock was owned equally by Manuel Lozano, Sr., and his son, Manuel Lozano, Jr. Mr. Lozano, Sr., was also president of the corporation; his wife, Emily J. Lozano, was vice president; and his son, Manuel Lozano, Jr., was the secretary-treasurer.

The petitioner's board of directors during the year in issue consisted of Mr. Lozano, Sr., Mr. Lozano, Jr., and Frank Lee Crist, Jr. Mr. Crist, an attorney, is a longtime school friend of Mr. Lozano, Jr., and served as the attorney for the petitioner for many years. Although he served on the board of directors for a number of years, Mr. Crist was never actively involved in making the business decisions of the corporation; he always agreed with the decisions made by the Lozanos because he regarded the corporation as their business. The Lozanos have always operated and managed the petitioner in an informal manner with the knowledge and acquiescence of Mr. Crist.

Prior to the close of the petitioner's fiscal year ending in 1965, it established a pension plan and a profit-sharing plan. The District Director of Internal Revenue issued favorable determination letters for both plans on March 1, 1968, and on March 20, 1968, certain amendments were made in the plan. During the year in issue, eight of the petitioner's employees participated in each plan. The profit-sharing plan does not contain a definite contribution formula. Article VII of the plan as amended provides:

The Company may on or before November 30th of each year determine the amount it will contribute to the Fund from its profit, and the Company shall announce the same to the participants of the Plan. The Company, however, for no fiscal year shall contribute any sum in excess of the allowable deduction from gross income under the Internal Revenue Code * * *

Ever since the profit-sharing plan has been in existence, it has been the business practice of Mr. Lozano, Sr., and Mr. Lozano, Jr., to have a meeting with their accountant sometime in October, more than a month before the close of that fiscal year, to decide on the corporation's contribution to

the profit-sharing plan for that year. For every year up to and including the year in issue, as a result of such meeting, the Lozanos decided that the corporation would make the maximum contribution which would be deductible for tax purposes, and payment of such amount has always been made. Before the close of each taxable year, Mr. Crist was informed of such decision either by the accountant or by the bookkeeper employed by the petitioner. He has always acquiesced in that decision, even though he never formally executed documents attesting to that fact. The traditional pattern of such events occurred during the year in issue. Although the specific dollar amount of the contribution was not known at the time the Lozanos met with their accountant, they were generally aware of the approximate amount, and at the time of their decision, they authorized a contribution of the maximum deductible dollar amount.

The computation of such amount was carried out by the administrator of the petitioner's plan, Zischke Organization, Inc. (Zischke), based upon the payroll records submitted to it by the petitioner. Zischke received such payroll information after the close of the petitioner's fiscal year because the complete payroll records were not available until that time. Upon receipt of such records, Zischke first determined the required contribution to the petitioner's pension plan; then, the amount of the contribution to the profit-sharing plan was computed in accordance with the instructions of the petitioner. During the year in issue and for many years prior thereto, the petitioner's bookkeeper submitted all the necessary papers to Zischke. Prior to the close of the taxable year in issue, she was told by Mr. Lozano, Jr., that the corporation had decided to make the maximum contribution, and she passed on such information to Zischke. As computed by Zischke, the maximum contribution the petitioner could make to its profit-sharing trust for the year in issue was $19,533, and such amount was paid into the trust within the statutory grace period as provided in section 404(a)(6) of the Internal Revenue Code of 1954[1] as in effect during the year in issue.

---

[1] All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.

Although the bookkeeper was not specifically instructed by Mr. Lozano, Sr., or Mr. Lozano, Jr., to inform the employees participating in the profit-sharing plan that the petitioner had decided to make the maximum contribution, she did informally tell many of them about such decision, and most if not all of the participating employees were aware of that decision prior to the close of the year in issue. In addition, after the close of the fiscal year, when the amount of the contribution to the profit-sharing plan was determined, Zischke made up a certificate for each participating employee informing him of his interest in the trust. Such certificates were given to the employees each year.

In its 1971 Federal corporate income tax return, the petitioner deducted its contribution to the profit-sharing trust in the amount of $19,533.18. The Commissioner disallowed such deduction in his notice of deficiency on the ground that the petitioner did not incur a liability for such contribution within the year in issue.

## OPINION

We must decide whether the petitioner properly accrued during its 1971 taxable year the maximum deductible contribution it could make to its profit-sharing trust. Generally, to obtain a deduction for a contribution to such a trust, it is necessary for a taxpayer to make such contribution within the taxable year for which the deduction is sought. See sec. 404(a)(3). However, it is difficult, if not impossible, to calculate with accuracy during a taxable year the amount of the maximum deductible contribution, because that computation depends upon the total compensation of the participating employees throughout the taxable year for which the deduction is sought. Sec. 404(a)(3) and (7). Since the payroll records are not available until the close of the fiscal year, any contribution made prior to that time would generally represent a taxpayer's guess of its payroll for that year. Congress has long recognized the difficulty of making an accurate calculation of the maximum deductible contribution before the end of a taxable year and has long provided relief to

accrual method taxpayers in such a situation.[2] Section 404(a)(6), as in effect during the year in issue, provided:

(6) TAXPAYERS ON ACCRUAL BASIS.—For purposes of paragraphs (1), (2), and (3), a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made not later than the time prescribed by law for filing the return for such taxable year (including extensions thereof).

Thus, as long as an accrual method taxpayer accrues within a taxable year the obligation to make the maximum deductible contribution to its profit-sharing plan, it will be entitled to deduct such amount when it is finally computed, if it is paid within the statutory grace period provided in section 404(a)(6). In this case, there is no dispute that the petitioner made its contribution to the profit-sharing plan within the statutory grace period; the dispute turns on whether it properly accrued its obligation to make such payment.

In connection with section 404(a)(6), section 1.404(a)–1(c), Income Tax Regs., in relevant part provides:

this provision is not applicable unless, during the taxable year on account of which the contribution is made, the taxpayer incurs a liability to make the contribution, the amount of which is accruable under section 461 for such taxable year. * * *

For tax accounting purposes, an obligation is properly accruable as a liability by a taxpayer in the year when all events have occurred which fix the fact of liability and the amount thereof can be determined with reasonable accuracy. Sec. 1.461–1(a)(2), Income Tax Regs.; *United States v. Anderson,* 269 U.S. 422 (1926); *Subscription Television, Inc. v. Commissioner,* 532 F.2d 1021, 1027 (5th Cir. 1976), affg. a Memorandum Opinion of this Court; *Precision Industries, Inc. v. Commissioner,* 64 T.C. 901, 905 (1975); *West Virginia Steel Corp. v. Commissioner,* 34 T.C. 851, 862 (1960). Whether such

---

[2] The Employee Retirement Income Security Act of 1974, 88 Stat. 923 (ERISA), amended sec. 404(a)(6) so as to allow a statutory grace period for all taxpayers, whether on the accrual or cash method of accounting. The legislative history makes clear that such action was taken in recognition of the difficulty faced by cash and accrual method taxpayers of computing the maximum deductible contribution before the close of that taxable year. In addition, it was thought that cash method taxpayers should be allowed to wait and compute the deduction after the close of the taxable year so that they would not be denied the opportunity to make the maximum deductible contribution. See H. Rept. 93–779 (1974), 1974–3 C.B. 244, 360; H. Rept. 93–807, p. 118 (1974); Conf. Rept. 93–1280 (1974), 1974–3 C.B. 415, 508.

conditions exist requires an examination and evaluation of the facts of the case. *Subscription Television, Inc. v. Commissioner, supra.* The Commissioner recognizes that the amount of the liability could reasonably be computed at the end of the taxable year, but he contends that the petitioner did not incur, within the year, a liability to make such contribution. The Commissioner takes the position that for the petitioner to have incurred such liability within the year, the board of directors must have made a specific commitment to make the contribution in the manner set forth in Rev. Rul. 71–38, 1971–1 C.B. 130. Therein, he ruled that in a profit-sharing plan without a definite contribution formula, an accrual method corporate employer would be considered as having incurred the liability for a contribution to such plan if, before the end of a taxable year, the corporation's board of directors authorized the contribution, memorialized it in writing, and notice thereof, either oral or written, was given to the covered employees.

The Commissioner contends that a number of such requirements have not been met by the petitioner: First, he argues that the petitioner's board of directors never authorized its contribution to the profit-sharing plan within its 1971 taxable year because there was no formal meeting of the board in which Mr. Crist participated, nor was there any written authorization. The corporate petitioner is archetypical of a closely held corporation: the Lozanos were the sole shareholders, its primary officers, and two of the three members of the board of directors. They ran the corporation, usually in an informal manner. Mr. Crist, a longtime school friend of Mr. Lozano, Jr., was never actively involved in the management or operation of the business; he always acquiesced in their management decisions. For the years beginning after 1965, Mr. Crist knew that before the close of the taxable year, the Lozanos sat down with their accountant and decided on the contribution to be made to the petitioner's profit-sharing plan; and he also knew of and acquiesced in their decision to make the maximum deductible contribution in every year before the year in issue. We have found that before the end of the year in issue, he again acquiesced in their decision to make a similar contribution.

California allows the directors of closely held corporations to make a corporate decision in an informal manner, if all the directors participate or acquiesce in such decision. *Coachella Valley Lumber & Supply Co. v. Hollenbeck,* 145 Cal. App. 2d 722, 303 P.2d 98 (4th Dist. Ct. App. 1956); *Brainard v. De La Montanya,* 18 Cal. 2d 502, 116 P.2d 66, 70 (1941); 2 Fletcher, Cyclopedia Corporations, ch. 11, sec. 395 (1969); see Note, "Extent to Which Corporate Directors May Act Without a Formal Board Meeting," 11 Syracuse L. Rev. 68 (1960). Furthermore, in determining the validity of transactions involving closely held corporations, the courts of California look at the substance of such transactions and disregard mere irregularities in paper work. *Crane Valley Land Co. v. Bank of America,* 182 Cal. App. 2d 166, 5 Cal. Rptr. 731, 736 (1st Dist. Ct. App. 1960); *Tabery v. Commissioner,* 354 F.2d 422 (9th Cir. 1965), affg. a Memorandum Opinion of this Court. Thus, it is apparent that under California law, the authorization by the petitioner's board of directors to make the maximum deductible contribution to its profit-sharing trust was valid and of full force and effect. Cf. *Precision Industries, Inc. v. Commissioner,* 64 T.C. at 907. Moreover, it is irrelevant that Mr. Crist did not reduce his acquiescence to a written form; such an irregularity does not invalidate the authorization in these circumstances. *Armstrong Manors v. Burris,* 193 Cal. App. 2d 447, 14 Cal. Rptr. 338, 343 (4th Dist. Ct. App. 1961).

Nor is the authorization any less effective because it was oral and not memorialized in writing before the end of such taxable year. Cf. *Faucette Co. v. Commissioner,* 17 T.C. 187, 199 (1951). Section 170(a)(2) specifically allows an accrual method corporation to deduct a charitable contribution in a taxable year if it is paid within a statutory grace period and if "the board of directors authorizes a charitable contribution" during such year. Sec. 170(a)(2)(A). When faced with the congressional requirement of board authorization, we held that it was satisfied upon the agreement of the board, even though it was not memorialized in writing, and in so doing, we overturned a Treasury regulation requiring written authorization. *Faucette Co. v. Commissioner, supra* at 197–199; see *Philipp Bros. Inter-Continent Corp. v. United States,* an unreported case (S.D. N.Y. 1966); see also *Columbia Iron & Metal Co. v. Commissioner,* 61 T.C. 5 (1973); *Alabama Pipe Co.*

*v. Commissioner,* 23 T.C. 95, 99 (1954). Here, the Commissioner has set forth his requirement of written authorization in a revenue ruling, but we find it no more convincing and decline to uphold it.[3]

Finally, the Commissioner claims that the petitioner did not inform its covered employees of its decision to make the maximum deductible contribution to its profit-sharing trust prior to the close of its 1971 taxable year. Although the Commissioner has not explained his reason for requiring notice in order to have an accruable liability,[4] the facts of record make plain that prior to the close of the petitioner's 1971 taxable year, all, or virtually all, of the covered employees were aware of the petitioner's decision with respect to the contribution, even though they learned of it informally. Under the circumstances, such notice seems sufficient.[5] Cf. *Aero Rental v. Commissioner,* 64 T.C. 331, 337 (1975).

In support of his position, the Commissioner relies upon *Subscription Television, Inc. v. Commissioner, supra,* and *Precision Industries, Inc. v. Commissioner, supra.* However, those cases are readily distinguishable because therein, the courts found that the corporate taxpayers had failed to authorize a contribution within the taxable year; accordingly, no definite obligation to make a contribution could be found, and the deductions were therefore disallowed. On the contrary, here we have found that the directors took positive action to authorize the contribution to the profit-sharing plan and that their action constituted a valid authorization under California law.

In summary, we find that the petitioner has not fully complied with the conditions of Rev. Rul. 71–38, *supra;* yet, before the end of the 1971 taxable year, there was a valid

---

[3] See also *Coker Pontiac, Inc. v. Commissioner,* T. C. Memo. 1975–305 (held, Commissioner's requirement of written authorization rejected; oral authorization by the board sufficient for accrual of contribution to employer's profit-sharing plan).

[4] In some situations, notice to the beneficiaries of the trust may have legal significance. See *Aero Rental v. Commissioner,* 64 T.C. 331, 336–337 (1975); cf. *Poirier & McLane Corp. v. Commissioner,* 547 F.2d 161 (2d Cir. 1976), revg. 63 T.C. 570 (1975), cert. applied for 4/11/77. However, in this situation, it is not clear what legal significance attaches to the notice requirement. Cf. *Precision Industries, Inc. v. Commissioner,* 64 T.C. at 907.

[5] See also *Coker Pontiac, Inc. v. Commissioner,* T. C. Memo. 1975–305 (held, for purposes of Rev. Rul. 71–38, 1971–1 C.B. 130, informal notice sufficient).

authorization of the contribution to be made to the plan, and there was substantial notice to the employees of such action. Under the circumstances, we are satisfied that such action is sufficient to comply with the requirements of section 404(a)(6). Authorization by the board of directors by itself may not be sufficient to create a fixed liability for most purposes (cf. *Commissioner v. H. B. Ives Co.*, 297 F.2d 229 (2d Cir. 1961), revg. a Memorandum Opinion of this Court, cert. denied 370 U.S. 904 (1962)); yet, it is sufficient to create a right to deduct a charitable contribution under section 170 if the contribution is in fact made within the permitted time, and the same approach has been adopted in connection with contributions to an employee plan made under section 404(a)(6). See *Subscription Television Inc. v. Commissioner*, 532 F.2d at 1028–1029; *Precision Industries, Inc. v. Commissioner*, 64 T.C. at 907–908;[6] cf. *Champion Spark Plug Co. v. Commissioner*, 30 T.C. 295 (1958), affd. per curiam 266 F.2d 347 (6th Cir. 1959). Accordingly, we hold that the petitioner's contribution is deductible for its 1971 taxable year.

*Decision will be entered for the petitioner.*

---

[*] Opinion withdrawn Dec. 27, 1977.

[6] See also *Coker Pontiac, Inc. v. Commissioner*, T. C. Memo. 1975–305; *Misceramic Tile, Inc. v. Commissioner*, T. C. Memo. 1968–31.